### NIAGARA FALLS BRIDGE COMMISSION v. UNITED STATES.
#### No. 46213.

Court of Claims.
May 3, 1948.

Harry J. Gerrity and F. G. Smithson, both of Washington, D. C., for plaintiff.

Grover C. Sherrod, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff owns and operates the Rainbow Bridge between Niagara Falls, New York, and Niagara Falls, Ontario. At the American end of the bridge plaintiff erected quarters to house the Customs Service and the Immigration Service. These services took up occupancy of these quarters on November 1, 1941. Plaintiff sues for rent for the quarters occupied by the Customs Service from November 1, 1941, to July 1, 1945, the date upon which the Customs Service entered into a lease with plaintiff providing for the payment of rent thereafter. It sues for rent of the quarters occupied by the Immigration Service from November 1, 1941, to June 30, 1947, no lease having been entered into covering the quarters occupied by this service.

■ If anyone goes into occupancy of another's premises not under a claim of right, he does so with the implied obligation that he will pay a reasonable rental therefor. This applies to the United States as well as to anyone else. Carpenter v. United States, 17 Wall. 489, 493, 21 L.Ed. 680, et seq.; United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935; United States v. Berdan Fire-Arms Mfg. Co., 156 U.S. 552, 15 S.Ct. 420, 39 L.Ed. 530; Buffalo & Fort Erie Public Bridge Authority v. United States, 106 Ct.Cl. 731, 65 F.Supp. 476.

■ Such a contract is implied because no one has a right, of course, to occupy another's premises without paying for it, and it is to be presumed that a· person occupying them does so with the understanding that he will discharge the obligation to pay rent which the law imposes upon him. It is to be presumed that a party intends to do that which the law requires him to do.

■ Furthermore, if the United States occupies a person's premises, it is, ordinarily, liable for the rental value thereof even though it occupies them against the will of the owner and without an intention on the part of the United States to pay rent. This liability arises under the Fifth Amendment prohibiting the taking of private property without the payment of just compensation. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789; Cotton Land Co. v. United States, Ct.Cl., 75 F.Supp. 232; St. Regis Paper Co. v. United States, Ct.Cl., 76 F.Supp. 831.·

■ However, if a person occupies another's premises with the understanding on the part of both parties that no rent is to be charged therefor, then, of course, no contract to pay rent can be implied, nor is there a taking of property for which the Fifth Amendment requires the payment of just compensation.

The question presented in this case, therefore, is whether or not the Customs Service and the Immigration and Naturalization Service occupied plaintiff's quarters with the understanding that no rent was to be charged therefor, or whether or not they did so with the implied agreement that they would pay rent, or whether the defendant is liable under the Fifth

Amendment on account of its occupancy of the premises.

Plaintiff instructed its architect to submit to the Customs Service and the Immigration and Naturalization Service its plans for the quarters to be occupied by these Services. This was done, but at the time nothing was said about the payment of rent. Then on October 24, 1941, just prior to the time that the Services took up occupancy of their quarters, plaintiff wrote a letter to the Deputy Collector in Charge of the United States Customs Service at Niagara Falls, and to the Assistant Collector of Customs at Buffalo, and to the Inspector of the "Department of Immigration" at Niagara Falls, New York, and to the District Director of the Immigration and Naturalization Service at Buffalo, in which it said that it had neglected theretofore to mention the matter of rental. The letter then went on to state the cost of the erection of these quarters, and the cost of furnishing water, light, heat, and janitor service, and asked for a reply.

In reply, the Collector of Customs at Buffalo quoted a letter from the Commissioner of Customs in Washington to the Niagara Falls Bridge Commission, in which he said that, "it is the practice of the Treasury Department to require corporations or others interested in the erection of bridges across the International Boundary to provide facilities for housing the Customs and other personnel required in enforcing the Tariff laws and to prevent smuggling," and he further said that such facilities were then being provided by other bridges at Niagara Falls and at Buffalo.

■ Plaintiff made no reply to this letter and said nothing further about rent until June 22, 1944, nearly three years later, when it demanded the payment of rental from July 1, 1944. In view of plaintiff's failure to reply and its failure to make further demand for rent after the Commissioner of Customs had said that it was the practice of the Treasury Department to require bridge companies to provide facilities, we think the Customs

Service had a right to believe that it was occupying the premises rent-free. Believing that it was not plaintiff's intention to charge rent, of course no contract to pay rent can be implied from the fact that defendant occupied the premises.

■ The office of the Immigration and Naturalization Service at Buffalo referred plaintiff's letter of October 24, 1941, mentioning the matter of rental, to the headquarters of the Service in Washington. Thereafter, in November 1941, the District Director of the Buffalo District of the Immigration and Naturalization Service wrote plaintiff enclosing a copy of a letter from an attorney in the Department of Justice to Mr. Gerrity, plaintiff's attorney and also the attorney for another bridge company. In this letter the attorney said to Mr. Gerrity, who had written asking for rental on another bridge over the Niagara River, " * * * it seems only fair and equitable that the interests operating the bridge should provide rent-free space necessary for the maintenance of immigration inspection service." After receipt of this letter from the District Director of Immigration and Naturalization Service plaintiff made no further mention of rental for the quarters occupied by this Service until June 22, 1944. The Immigration and Naturalization Service, therefore, had a right to believe that plaintiff did not intend to demand rent for the premises occupied by them and, therefore, no contract that rent would be paid can be implied from their occupancy of the premises.

However, in Mr. Gerrity's letter to the Commissioner of Immigration and Naturalization Service he did demand payment of rental from July 1, 1944. The Commissioner replied thereto that it had occupied the premises with the understanding that no rent was to be charged therefor and he stated that he would not agree to pay rent thereafter until he thoroughly understood plaintiff's position as to the payment of rent.

In reply Mr. Gerrity, plaintiff's attorney, unequivocally demanded payment of rent after July 1, 1944, and the Immigration and Naturalization Service has continued

to occupy the premises in the face of that demand.

 While this Service has at no time expressly agreed to pay rent, nor is such an agreement to be implied from any correspondence or conversation between the parties, however, we think such a contract is to be implied from their continued occupation of the premises after this demand was made in June 1944. We think this is true because there was no obligation on plaintiff to furnish these premises and, therefore, the occupation of them by the defendant cast upon it an obligation under the law to pay a reasonable rental therefor, and it is to be presumed that the defendant intended to discharge the obligation which the law imposes upon it. Neither the letter of the Commissioner of Immigration and Naturalization Service of July 18, 1944, referred to above, nor the subsequent letter of August 7, 1944, suggesting that since Mr. Gerrity had been authorized to bring suit, he had better arrange a conference through the Claims Division of the Department of Justice, contained a refusal to pay rent. From these letters no agreement to pay can be implied, but at the same time there was no refusal to pay. In the absence of a refusal, it is to be presumed that the defendant intended to discharge that obligation which the law imposed upon it by reason of their occupancy of the premises of another. Even had there been a refusal to pay, defendant would, no doubt, have been liable under the Fifth Amendment.

This conclusion, we think, is fully sustained by our decision in Buffalo & Fort Erie Bridge Authority v. United States, supra, where the defendant's liability is more fully discussed.

 We have found that the reasonable rental value of the quarters occupied by the Customs Service was $3,600 per year, and of the quarters occupied by the Immigration and Naturalization Service was $4,500 per year. Defendant is, therefore, indebted to plaintiff in the sum of $3,600 for rent for the quarters occupied by the Customs Service from July 1, 1944, to July 1, 1945, and in the sum of $13,500 for rent for the quarters occupied by the

Immigration and Naturalization Service from July 1, 1944, to July 1, 1947, making a total of $17,100. Judgment for this amount will be entered.