Per Curiam:
Plaintiff is the owner of real property located at 898 Third Avenue, New York City. Defendant has occupied the ground floor of this property for use as a Post Office since 1928 under a number of leases, the last of which expired January 31, 1959, when the parties were unable to agree on terms for a renewal or extension. Defendant has continued in possession making payment, which has been accepted by plaintiff, at the former lease rate of $6,970 per annum on the contention that it was paying the maximum statutory rental and that it could remain as a statutory tenant without paying increased rent under New York rent control statutes. At one time plaintiff had tentative plans for its own use of a portion of the premises occupied by de *282 fendant but, since failure of negotiations for renewal or extension of the lease, has made no further demand that defendant vacate the premises nor has it taken any action in this regard believing that it has no legal remedy for such purpose. Plaintiff endeavored to negotiate an increased rental but negotiations produced no agreement. The last lease (defendant’s exhibit No. 7), entered into on September 12, 1955, for a term from February 1, 1955, through January 31, 1957, provided that payment of rent was to be made “at the end of each month” and that the lease might be renewed at a rental of $6,970 for one additional two-year term “upon the terms and conditions herein specified.” By letter notice, dated June 25,1956, the Post Office Department exercised its option extending the lease for two years from February 1,1957, at a rental of $6,970 per annum, including equipment, heat, water and sewerage service, with all other provisions o.f the formal lease to remain the same (defendant’s exhibit No. 9).
On October 5, 1960, plaintiff filed this action alleging a taking of its property by defendant as of February 1, 1959, without just compensation in violation of the Fifth Amendment to the Constitution and claiming recovery of the fair and reasonable rental value after giving defendant credit for amounts paid.
On November 1,1961, the court entered an order deferring action on plaintiff’s motion for summary judgment pending a determination by the parties or by the commissioner “of the reasonable rental value of the subject premises during the holding over period.” Since the parties did not stipulate such value, Trial Commissioner Marion T. Bennett took evidence on this issue and on March 7,1963, filed his report of the findings of fact. Plaintiff filed exceptions to the report and the case was submitted to the court on oral argument of counsel and the briefs of the parties. Upon consideration thereof, the court approves and adopts the findings of fact of the trial commissioner hereinafter set forth, and concludes as a matter of law that plaintiff is entitled to recover on the basis of the findings plus an amount to be computed at the rate of 4 percent per annum from February 1, 1959, to date of judgment, as a part of just compensation, and less *283 the amounts paid to and received by plaintiff as rent over such period. Plaintiff’s motion for summary judgment is granted.
The computation of the amount of recovery has been made bearing in mind that payment of the annual rental of $6,970 was made monthly at the rate of $580.83 and that the lease calls for payment thereof to be made at the end of each month. Interest has been computed on this basis. For the five-year holdover period to March 1, 1964, the rental due under our findings is $72,000. During that period defendant actually paid $34,850 in rental, leaving an underpayment of $37,150. Interest at four percent (4%) per annum on the latter figure, as a part of just compensation, is $3,639.72. The total due plaintiff therefore is $40,789.72, and judgment for plaintiff in that amount is entered.
FINDINGS OF FACT
1. This case comes before the court pursuant to its order of November 1, 1961, deferring action on plaintiff’s motion for summary judgment pending a determination by the parties through stipulation or, in the absence thereof, by the commissioner “of the reasonable rental value of the subject premises during the holding over period.” The parties did not stipulate. Findings of fact which follow are based upon evidence presented by the parties at the trial of the issue.
2. The property in question is occupied by defendant which is using it as the Sutton Station Post Office, New York City. The defendant has been in possession since 1928. Defendant occupies the ground floor of this five-story brick building situated at 898 Third Avenue, New York City. The top four floors contain eight apartments. The building is located on the west side of Third Avenue between East 54th and East 55th Streets and on Lot 35, Block 1309, Section 5. The lot is approximately 25 feet wide and 95 feet deep. The area occupied by defendant has approximately 1,847 square feet of floor space, measuring just over 20 by 90 feet, with the narrow dimension being the store front. The building, constructed about 1855, is dirty, shows little evidence of recent modernization, and is only “in fair condi *284 tion.” In 1959 the property was assessed at $85,000, of which. $10,000 represented the building. The last reassessment in 1960-1961 raised the assessment on the land to $85,000 but left the building at $10,000.
3. Only two prior leases are known concerning the ground floor of the building in issue. One was for a 10-year term commencing February 1, 1938, at an annual rental of $7,000 for the first 2 years and $4,250 for the last 8 years. On September 12, 1955, another lease was executed for a 2-year term commencing February 1, 1955, at a rental of $7,920.50. This lease conferred upon defendant the option to renew it for an additional 2 years at an annual rental of $6,970. This option was exercised on behalf of defendant on June 25,1956.
4. On June 26,1958, the owners of the property filed with the Post Office Department a Certificate of Approval of Title to Leased Property, disclosing that on that date title had been conveyed to plaintiff. The plaintiff is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York City.
5. The 1955 lease, as renewed, terminated on January 31, 1959. In late 1958 representatives of the parties began negotiations for an extension or renewal. Plaintiff had tentative plans, for its own use, for a part of the premises occupied by defendant and did not wish to grant a new lease but was willing for defendant to remain in possession for 2 or 3 years as a statutory tenant on a month-to-month basis provided defendant would pay a 50-percent rent increase. The defendant was willing to consider a substitution of adjacent space but the suggestion of increased rent was not acceptable. Defendant considered that there would be no consideration for such an arrangement, that it was paying the maximum statutory rental and that it could remain as a statutory tenant without paying increased rent under New York rent control statutes. When negotiations for a lease extension agreement failed, defendant wrote plaintiff on March 12, 1959, in pertinent part as follows:
In view of the fact that it has not been possible to agree upon a rental for a further term, and as the continuance of this postal unit is necessary, this is to inform you that the Department hereby invokes the provisions of the New York Pent Control Law, under which the rental to *285 be paid for these quarters will be at the rate of $6,970.00 per annum (the rate in effect July 1,1957).
Payment of rental, at the rate stated, retroactive to February 1, 1959, is being authorized.
6. Defendant remains in possession of and uses plaintiff’s property as aforesaid and plaintiff has accepted rental paid at the former lease rate of $6,970 per annum. Plaintiff has not since demanded that defendant vacate the premises nor has it taken any action to try to accomplish such a move believing that it has no legal remedy for such purpose. Plaintiff has not sought to decontrol under the New York Kent Control Law the property here in issue by tendering a lease to defendant at an increased rental computed in accordance with the formula provided by law. Tenants on the four floors above the first floor occupied by defendant are paying rent subject to the rent control statute.
7. On June 7, 1960, plaintiff’s attorney sent a letter to defendant requesting an appointment to negotiate a new rental stating that the rental being paid was creating a deficit instead of a profit and that plaintiff was entitled to a return of 8 percent on the fair value of its property under the New York Kent Control Law. Such negotiations were held but produced no agreement. The demand of plaintiff was then formalized by a letter of June 29, 1960, to defendant, asserting:
In accordance with your request, please be advised that formal demand is herewith made for an increase in rent of $1461.19 per month from February 1,1959 over and above the amount paid for rental for the Sutton Station Post Office.
As explained to you on the telephone the basis for the foregoing figure is an eight (8%) per cent return on a valuation of $210,000 for the property.
The valuation is based on the actual purchase price for the acquisition of the title to the property by the present landlord.
8. Plaintiff filed suit on October 5, 1960, and alleges a taking of its property by defendant as of February 1, 1959, without just compensation in violation of the Fifth Amendment to the Constitution. Plaintiff asserts that, as of February 1, 1959, the fair rental value of the premises occupied *286 by the Post Office Department of defendant is $1,461.19 per month over and above the sum of $580.83 per month being paid by defendant. Plaintiff states that this sum would thus represent an annual increased rental of $17,534.32, which added to the $6,970 annual rental being paid would total $24,504.28 per year. The parties agree and it is found that on February 1, 1959, the highest and best use of the portion of the premises occupied by defendant was for a retail store such as for furniture or antiques. For such use at such time and assuming the rent control law inapplicable defendant admits that $6,970 per year was below fair market rental value which defendant places at $11,475 per annum. Based on defendant’s estimate of the fair market value of the premises and considering the cost and expenses of operation and the percentage of return allowed under State law, the plaintiff would be entitled under defendant’s theory to a rental of $9,048.18 per annum ($754.02 per month) since February 1,1959, under the New York Emergency Pent Control Law, as more fully explained hereafter. The parties support their respective valuations by the testimony of expert witnesses.
9. Plaintiff’s witness, Emanuel Kreisel, has been in the real estate business in New York City since 1930. He manages and is rental agent for several buildings on Third Avenue in the vicinity of plaintiff’s property. He is familiar with the plaintiff’s property in issue here and with sales and rentals in the neighborhood. He has handled numerous sales and rentals in the Third Avenue area and throughout the city and is a qualified, expert, real estate appraiser with membership in appropriate professional organizations and with prior experience as an expert witness. Mr. Kreisel appraised plaintiff’s property and gave it as his opinion that the fair rental value thereof was $15,000 per year in 1959 and until mid-1960. From about July 1, 1960 through June 30, 1961, he said it was worth $17,500. Thereafter he estimated the fair market rental at $20,000 per annum. He attributes this increase in annual rental value to the improving character of the avenue and makes a comparison with other nearby properties with which he has personal familiarity.
*287 10. Consummated leases on two properties were cited by Kreisel and relied on by bim for comparability in establishing fair market rental value. One lease was for 898 Third Avenue. This property was across the street in the nest block south of plaintiff’s. No. 893 was approximately the same size as plaintiff’s property. Kreisel negotiated a lease for 893 Third Avenue for a furniture store at $15,000 per year on a 5-year lease, effective August 1,1957.
Another property relied on by Kreisel was at 895 Third Avenue on the southeast comer of 54th and Third and next door to 893. This property, leased for an antique shop, was approximately the same width as plaintiff’s but only 35 feet deep. The lease for 895 was consummated on March 1,1959, at a rental of $950 per month, or $11,400 per year for a 5-year period.
Kreisel also relied on a lease he negotiated in April 1962 on 918 Third Avenue, which is on the same side of the street as plaintiff’s property and one block north. This property measured 20 by 65 feet and the lease was for $15,000 per annum on a 5-year term. While this lease has been signed the tenant has not taken possession and is barred from doing so for a year, at which time the present occupant’s lease will expire.
11. Because of the developing nature of the neighborhood and increasing values on land for construction of large new buildings there, landlords, with few exceptions, are unwilling to grant long-term leases to tenants. In the block south of plaintiff and on the same side of the street, there are a number of decontrolled store buildings for which Kreisel is rental agent and where tenants pay around $400 per month without leases for properties 10 feet wide and about 50 feet in depth. If long-term leases were available on the properties Kreisel relies on to establish comparable market rental values and if they were all decontrolled as to the New York rent laws, he estimated that in 1962 they would reflect a 25-percent increase over 1959 rentals.
12. Kreisel used three other methods for the valuation of plaintiff’s property as of June 20,1962, the date of the trial. He estimated that the land had a square-foot value of $85 per square foot. Using this figure and certain adjustments, he *288 arrived at an appraised land value of $205,000. To this lie added $20,000 for the building for a total valuation of $225,000.
Plaintiff’s witness arrived at a similar valuation by the capitalization theory. He estimated effective gross income from the building at $25,300 per year, less $1,265 for vacancies or an effective gross of $24,035, expenses at $9,680 and a net estimated annual income of $14,355. He subtracted 6 percent from the estimated land value of $205,000, or $12,300, leaving a residual imputable to the building itself in the sum of $2,055 which capitalized at 10 percent gives a value of approximately $20,000 for the building. Using an over-all capitalization rate of 6.38 percent he arrived at a total 1962 valuation for land and building of $225,000.
Finally, assuming a gross rental of $5,300 for the apartments and the $20,000 he believed the ground floor to be worth per annum in 1962, or a total rental of $25,300 without allowance for $1,265 for estimated vacancies and contingencies as in the calculation in the paragraph just above, and using a gross multiple of 8.89 percent times the gross rental, Kreisel arrived at a figure of $225,000. Kreisel would allocate $20,000 of this sum to the building.
To adjust these figures for valuations as of February 1, 1959, Kreisel would reduce them by 25 percent as he would in the use of his estimated fair market rental values. This would reduce the building to a valuation of $15,000 and the land to $150,000 for 1959.
13. Because of the improving character of the neighborhood for new construction and its potential for the plaintiff’s property being assembled as a part of a tract for such construction, it was Kreisel’s opinion that the property, as a part of such plottage, had a sale value in 1962 of $150 per square foot and would bring a price of $353,750. He based this estimate on sales in the area, specifically identifying his sale of 7,700 square feet in three properties at 878, 880 and 882 Third Avenue on the same side of the street as plaintiff’s property but one block south. In 1961 he sold the 7,700 square feet at $90 per square foot, which was purchased 6 or 7 years ago at $35 per square foot. Three blocks south of plaintiff’s property on Third Avenue between 51st *289 and 52d Streets, Kreisel sold additional plottage in 1960 at $145 per square foot for construction of another large office building.
14. Plaintiff also offered the expert testimony of Mr. William T. Ryan of New York City. Mr. Ryan, a realtor for 40 years, was familiar with sales for plottage purposes on Third Avenue since 1959. He visited plaintiff’s property. He said, “It wasn’t in too good condition.” He agreed with Kreisel that its highest and best use would be for a first-class retail store, that the property was worth $225,000 in 1962 and said that this was true whether as part of an assembled plot or not and that its fair market rental value in 1962 was $20,000 and $15,000 on February 1, 1959.
15. Ryan was of the opinion that plaintiff’s property had a “plottage” value for assembly with other tracts if used for the construction of an office building or a high-rise apartment house. For establishing such value he was of the further opinion that sales of property from 46th to 59th Streets on Third Avenue were fairly comparable. He identified the following sales made in the years 1960-1962 as to location, size of lot and consideration:
777-79 Third Avenue-50’xl00’ $500,000
781 Third Avenue_ 25’x95’ 275,000
783 Third Avenue_ 25’x95’ 350, 000
785 Third Avenue_ 39’xl00’ 390,000
787-89 Third Avenue-. 37’xl00’ 370,000
793-95 Third Avenue. 25’xl00’ 500,000
861 Third Avenue_ 25’xl05’ 290,000
870-72 Third Avenue. 50’x75’ 600,000
874 Third Avenue_ 25’x75’ 400,000
The location of the foregoing properties on Third Avenue commences with No. 771, which is 6 blocks south of plaintiff’s property at 898 Third Avenue. Ryan also identified a closer tract at 862-68 Third Avenue, 10,000 square feet in size, which sold for $827,000 in 1961. None of these sales were in plaintiff’s block.
16.Ryan relied also on a lease to Bickford’s Restaurant at 861 Third Avenue, four floors of “an old ramshackle building * * * a shambles,” for $20,000 per annum on a 21-year lease. This location is 2 blocks south of plaintiff’s property and between 52d and 53d Streets. Considering the term *290 of the lease, the space leased, the location and the type of business to be conducted by Bickford’s, which is not the type that is the highest and best use for plaintiff’s property, it is found that this lease establishes no comparability of probative value in this case.
Ryan admitted that there are many commercial tenants on Third Avenue whose leases have expired, who are subject to the New York Rent Control Law, and who are paying rents comparable to what defendant is paying but which he described as not comparable to what such properties are really worth.
17. Defendant’s principal expert witness was Mr. Benedict Livingston of New York. He has been in the real estate business since 1943 and an appraiser since 1946. He is associated with a large realty firm, has outstanding academic preparation as an appraiser, belongs to appropriate professional associations and has much experience in appraisals throughout the United States and in New York, but not specifically on Third Avenue. He did visit plaintiff’s property on several occasions and visited and inspected other properties in the vicinity for the purpose of making comparisons of rental values. He also checked city records for recorded leases in the neighborhood and examined sales records. He has previously served as an expert valuation witness before other courts.
18. As comparative rentals, Livingston considered several properties. The closest to plaintiff’s property was at 902 Third Avenue, which is in the same block on the same side of the street and 25 feet north. This property was leased to Midtown Antiques for a term running from January 1,1959 to December 31, 1963, at an annual rental of $9,000, or $750 per month. This store has a frontage of 20 feet and a depth of approximately 60 feet, with some 1,150 square feet of floor area.
19. Livingston also considered other properties as a basis for arriving at an estimate of fair market rental value. Some of these properties were also considered by plaintiff’s expert, Kreisel, and are identified in finding 10 as 893, 895, and 918 Third Avenue. Livingston described No. 893 as the highest rental in the area. He differed from Kreisel on *291 the depth, of the property at 895, saying it was 55 instead of 35 feet with a total of approximately 1,398 square feet instead of 875 square feet based on Kreisel’s computation. He also gave the depth of 893 as 110 feet instead of Kreisel’s 90 feet, thus providing 2,200 square feet instead of 1,800.
Livingston’s evidence was that 918 Third Avenue is presently covered by a 1959 lease for $7,800 per annum for 1,150 square feet, approximately the same area evaluated by plaintiff’s expert, Kreisel. Mr. Kreisel testified he had negotiated a 5-year lease on this property not yet effective for $15,000 per annum.
Reference was made, also, to a 1961 lease for $10,000 per annum for 782 Third Avenue, covering 1,375 square feet, and to a 1960 lease for 896 Third Avenue, which is next door to plaintiff’s property and which contains only 573 square feet, for $4,800 per annum for a 5-year term for a fish store.
20. It was Livingston’s opinion that 902 and 895 Third Avenue were the premises most comparable to plaintiff’s at 898 due to the locations and due to the dates of the leases, which were each within one month of the date of February 1, 1959 — a date of importance in the case at issue. No. 902 is 25 feet north of 898 and No. 895 is across the street on the corner.
Leases on these properties reflect a front foot value of approximately $450. Using the Hoffman-Neill rule and making an allowance for the greater depth of plaintiff’s property, Livingston concluded that 898 would have an indicated rental value of $11,475 as of February 1,1959, for retail store use. This valuation, however, would be without regard to rent controls and would be the fair market rental value therof in an open market. Livingston found it not unreasonable to conclude that this valuation could be as high as $12,000. The improving character of the neighborhood, in his opinion, would justify a 10-percent increase in market rentals from 1959 to 1960,5 percent from 1960 to 1961, and 10 percent from 1961 to 1962, for a total of 25 percent for the period 1959 to 1962, although this would not be his preferred method of computing rent. He would use an estimated increase in front foot values from $450 in 1959 to $600 in 1962 to determine increased rents since the date of alleged taking, February 1, 1959.
*292 21. To compute fair rental value of 898 Third Avenue, assuming applicability of the New York Emergency Rent Control Law, Livingston applied the ratio of existing rents for apartments and post office space to the total and subtracted properly allocable expenses. He concluded that the fair market value as of February 1, 1959, was $106,000 and an 8 percent return thereon would be $8,480. He computed the fair rent attributable to the first floor as equivalent to 57 percent of the total income derived from the building. Fifty-seven percent thereof would be $4,888.60. Fifty-seven percent of annual expenses ($5,072) attributable to the store would be $4,214.58, or a total of $9,048 attributable to the store rental under the formula of the law as of February 1, 1959.
22. Assuming fair market value of the premises at 898 Third Avenue to have been $106,000 in February 1959 and using the law’s formula of 8 percent and applying this to the value of $60,420 attributable to the post office area (57 percent of $106,000) and subtracting expenses attributable to the part of the premises used by defendant ($4,214.58), Livingston arrived at an indicated rental value of $9,048.12. Livingston admitted that the rent paid by the defendant at the rate of $6,970 was below fair market value, although he confirmed Mr. Ryan’s opinion that the rent was comparable to what others in the area were paying who were protected by the rent control law for similar property.
23. If the foregoing formula were applied to plaintiff’s alleged valuation of $225,000 for the property as of 1962, it would result in a rental value of $14,475.58. The same formula applied to the purchase price paid by plaintiff in 1958 would result in a rental value of $13,791.58.
24. Defendant’s expert, Mr. Livingston, also considered sales in the neighborhood as a basis for the capitalization approach to valuation and admitted that the assessed value of plaintiff’s property was below current market value. He considered 898 Third Avenue as having a fair and reasonable market value of $106,000 as of February 1, 1959. The two sales closest to plaintiff’s property and nearest in point of time to February 1, 1959, were in the same block on the same side of the street at 902 and 904 Third Avenue.
*293 On September 30, 1958, No. 902 sold for $105,000. This lot was the same size as plaintiff’s. Adjacent was No. 904 which sold for $110,000 on September 9,1958. This lot was approximately similar in size to plaintiff’s, just slightly wider. Livingston’s valuation of No. 898 at $106,000 was based largely on these two sales and by mathematically computing the unit lot as being .97 of the standard lot of 25 by 100 feet in that section of the city. On this basis, 898 would come to $105,730, which he rounded out to $106,000. He found it not unreasonable, however, to conclude that the valuation could be as high at $110,000, as valuation is not an exact science. Mr. Livingston gave no credence to plaintiff’s purchase of No. 898 for $210,000 in June 1958 as an indication of fair market value, since the mortgage bore no interest, and payments involved amounted to less than the going rate for mortgage loans.
Altogether, Livingston considered 12 sales on Third Avenue. In addition to 902 and 904, two properties measured the same size as plaintiff’s. No. 920 sold for $144,285 on September 30,1958. Next door, No. 922 sold for $127,796 on October 4, 1956. Both properties were a block north of plaintiff’s property. The other tracts differ in size and are not found useful here.
25. Defendant’s expert rejected sales made subsequent to February 1959 which were alleged to be comparable to plaintiff’s property. He also rejected sales to the United States which were across the street from plaintiff’s property because those sales like the ones relied upon by plaintiff were for plottage purposes. It is found that sales made subsequent to February 1959, as a part of plottage efforts for new construction, are too speculative to be of probative value in this case as a basis for fixing fair market rental for the space used by defendant at 898 Third Avenue.
ULTIMATE FINDINGS
26. The New York Emergency Rent Control Law (McKinney’s Unconsolidated Laws, section 8554, page 576) states:
A net annual return of eight per centum on the fair value of the entire property including the land shall be *294 presumed to be a reasonable return. The assessed valuation of the entire property, including land and building, as shown by the latest completed assessment-roll of the city, shall be presumed to be the fair value of the premises, but other lawful evidence of the fair value may be offered and received.
It is found that the assessed valuation of plaintiff’s property at 898 Third Avenue, New York City, did not on February 1,1959, nor does it today reflect the fair value of the premises and rent computed thereon would be incorrect as reflecting fair market rental value.
27. Other lawful evidence of fair value was received in the trial of this case. The weight of the credible evidence supports the conclusion and it is found that for its highest and best use as rental property as of February 1, 1959, the fair rental value of the portion of plaintiff’s premises at 898 Third Avenue, New York City, occupied by defendant’s post office, was $12,000 per annum. It is further found that in the continuing hold-over period to date of judgment the fair market rental value would have been $13,200 in the 12 months to February 1,1960; $13,800 for the 12 months to February 1,1961; $15,000 for the 12 months to February 1,1962, and at the same rate — $1,250 per month — thereafter to date of judgment.