REUNION, INC., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 09–280L.

United States Court of Federal Claims.

Dec. 10, 2009.

Robert M. Frey, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Jackson, Mississippi, for plaintiffs.

Jessica M. Held, Trial Attorney, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, D.C., for defendant. With her on the brief was John C. Cruden, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This action concerns a 72–acre parcel of land in Madison County, Mississippi, near Jackson, Mississippi, that has been leased by the Federal Aviation Administration ("FAA") for use as a Very High Frequency Omnirange Radar Tactical Air Navigation ("VORTAC") facility. Compl. ¶ 5. Plaintiffs, Reunion, Inc., Cypress Brake Properties, L.P., and Annandale Investors, L.P. (collectively "Reunion"), claim that the United States has

continued to occupy their property after the expiration of the lease without compensation in contravention of the Takings Clause of the Fifth Amendment. Compl. ¶¶ 21–22, 25. Reunion also asserts a contractual theory for recovery of damages, alleging that when the government refused to vacate plaintiffs' property upon expiration of the lease, it breached its contractual obligations respecting occupation of their property. Compl. ¶ 27. Reunion additionally avers that the FAA has violated its own regulations by failing to vacate plaintiffs' property upon expiration of the lease. Compl. ¶ 26. The government has answered Reunion's complaint, admitting "a temporary physical taking of a leasehold interest in the VORTAC property" but asserting the affirmative defenses of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Answer to Compl. and Affirmative Defenses at 2, 7 ("Answer"). Reunion has moved to strike those defenses as "insufficient" under Rule 12(f) of the Rules of the Court of Federal Claims ("RCFC"), Pls.' Mot. to Strike Insufficient Defenses at 1 ("Pls.' Mot."), and the government has responded with an opposition to that motion. *See* Def.'s Resp. in Opp'n to Pls.' Mot. to Strike Insufficient Defenses ("Def.'s Opp'n").

Despite its opposition to Reunion's motion, the government continues to concede that a taking has occurred and advises that "[t]he FAA will file a condemnation action in the district court by December 31, 2009." Joint Prelim. Status Report at 4. The government acknowledges that any future filing of a Declaration of Taking in the United States District Court for the Southern District of Mississippi would not moot this action because such a Declaration would have effect only prospectively. *See id.*[1] This action would remain viable for the period of the government's occupancy after the lease expired and before the Declaration of Taking was filed. Given its concession that a temporary taking has occurred, the government urges that future "proceedings [in this court] should be limited to determining just compensation for the period between the end of the lease and the filing of the condemnation action." *Id.*[2] In this respect, the parties have failed to reach an agreement on a plan for future proceedings in this case, and the court necessarily must address the resulting case-management issues in connection with action on Reunion's motion to strike.

### FACTS[3]

On December 17, 1996, the United States, acting through the FAA, and plaintiffs' predecessors in title entered into a lease by the United States of a parcel of land located in Madison County, Mississippi for the maintenance of a VORTAC facility for the guidance of aircraft. *See* Lease.[4] The facility had been in existence for "some years" prior to the Lease. Compl. ¶ 5.[5] The Lease covered approximately five acres, which "together with developmental restrictions and covenants covering all lands located within a one[-]thousand[-]foot radius of the facility," constrained a total of approximately seventy-two acres. *Id.; see* Lease ¶¶ 1, 4, and Attach. "A" (Legal Description). The FAA

---

1. *See* 40 U.S.C. §§ 3113 ("Acquisition by Condemnation"), 3114 ("Declaration of Taking"); *see also* 49 U.S.C. § 40110 (FAA authorized to acquire property "to the extent that amounts are available for obligation.").

2. Subsequent citations to Joint Preliminary Status Report will refer to plaintiffs' or defendant's statement of positions in that Report, *e.g.*, "Pls.' Stmt. at ——" or "Def.'s Stmt. at ——."

3. The recitations that follow do not constitute findings of fact by the court. Instead, the factual elements recited in this opinion are taken from the parties' complaint, answer, and other filings and are either undisputed or are alleged and assumed to be true, except where factual controversy is explicitly noted.

4. Reunion has filed a copy of the lease agreement dated December 17, 1996 together with copies of amendments to the lease agreement dated December 18, 2000 and January 3, 2005. References to the lease agreement dated December 17, 1996 will be to "Lease." References to the December 18, 2000 and January 3, 2005 amendments to the lease agreement will be to "Lease Amend. 1" and "Lease Amend. 2," respectively.

5. The government avers that the FAA "has maintained leaseholds on the subject property for the operation of the VORTAC [facility] for the past thirty years." Answer ¶ 7.

was also granted an easement for ingress and egress. *See* Lease, Attach. "A." The Lease specified a term beginning October 1, 1996 and expiring September 30, 2008. Lease ¶ 2. Notably, the Lease as executed contained a "Holdover" provision that was struck out and initialed by the parties, indicating that the parties intentionally elided any holdover clause from the lease. *See* Lease ¶ 9. Although the Lease was amended on December 18, 2000, and again on January 3, 2005, the lease term was not changed by these amendments. *See* Lease Amend. 1; Lease Amend. 2.

At the time the FAA first began leasing the VORTAC property for the operation of the facility, the property and surrounding areas were rural pasture land. Compl. ¶ 7. However, since that time, development has increased in southern Madison County, and in 2001, plaintiffs or their predecessors began developing "Reunion," a large, two-thousand-acre master-planned community, said to be "the largest and most successful community of its kind in the State of Mississippi." *Id.* The facility is located within the Reunion development and, according to Reunion, is "directly in the path of the immediate development plan." *Id.* Reunion avers that as early as 2001, it told the FAA of its plans to develop the property covered by the Lease after the Lease expired on September 30, 2008 and "spent their own money in 2001 to have Airspace Safety Analysis Corporation, a Boeing Subsidiary, study the feasibility of relocating [the facility]." Compl. ¶ 9. The study, which has not been submitted in this case, reportedly produced four relocation options, which Reunion discussed with the FAA during the period from May through July of 2001. *Id.*

On September 20, 2005, Reunion sent a letter to Wayne Simmons, FAA's Southern Regional Real Estate Contracting Officer, reminding FAA that the Lease would expire on September 30, 2008 and that Reunion planned to develop the property surrounding the facility upon expiration of the Lease and accordingly did not intend to renew or extend the Lease beyond the term ending September 30, 2008. Compl. ¶ 10. Mr. Simmons responded by letter, dated May 4, 2006,

in which he expressed a desire to negotiate a renewal lease or purchase of the property. Compl. ¶ 11. Mr. Simmons reportedly stated that the government had a continuing need for the facility and that "failing a negotiated resolution, the FAA would 'convert' the property to government ownership." *Id.* With regard to relocation, Mr. Simmons represented that relocating the facility would cost the government $2.5 million. *Id.* Reunion responded by letter dated October 13, 2006, advising the FAA that they believed the property was worth more than that amount and urging the government to pursue relocation before the Lease expired on September 30, 2008. Compl. ¶ 12.

A series of further communications and meetings between Reunion and FAA officials concerning the expiration of the Lease followed. In October of 2006, Alan Bradley of the FAA met with plaintiffs at the facility. Compl. ¶ 13; Answer ¶ 13. Thereafter, on November 3, 2006, Mr. Simmons contacted Reunion and requested that they provide the government with an estimate of the property's current value, together with any supporting documentation. Compl. ¶ 13; Answer ¶ 13. The FAA offered to meet with Reunion for further discussions concerning the Lease during the month of November 2006. Compl. ¶ 14; Answer ¶ 14. Reunion avers that it received a further communication from the FAA on November 9, 2006, indicating that the FAA was "in the process of 'review and evaluation' of this matter and expected to achieve a plan for resolution within thirty (30) days." *Id.* On March 29, 2007, Reunion met with Mr. Bradley and Mr. Simmons at the facility. Compl. ¶ 15; Answer ¶ 15. Plaintiffs allege that Mr. Simmons, who had not previously been to the facility, was surprised by the "level of development surrounding the [f]acility" and promised to address the matter with his superiors and report back "promptly." Compl. ¶ 15.

On April 16, 2007, Reunion again contacted Mr. Simmons by e-mail regarding the Lease. Compl. ¶ 16; Answer ¶ 16. According to Reunion, Mr. Simmons responded the next day, on April 17, 2007, "saying that the FAA was holding a meeting on this issue that day[ ] and promising to keep ... [Reunion] in-

formed." Compl. ¶ 16. Reunion alleges that on April 26, 2007, Mr. Simmons wrote to report that FAA planned to issue a public circular outlining three options regarding the facility after expiration of the Lease: *viz.* decommissioning, relocation, and negotiated renewal. Compl. ¶ 17. Reunion and Mr. Simmons reportedly communicated throughout the summer of 2007 regarding progress on the circular, exchanging communications on May 3, June 7, and June 11, 2007. Compl. ¶ 18. To date, the FAA has not issued a circular regarding the decommissioning, relocation, or negotiated renewal of the facility located on Reunion's property. Compl. ¶ 18; Answer ¶ 18.

In mid–2007, Reunion's consultant, Wayne Atkinson, communicated by telephone and email with Tony Greco, Lead Planner for FAA's Eastern Service Area. Compl. ¶ 19; Answer ¶ 19. Mr. Greco indicated that the facility was needed for the foreseeable future and would not likely be removed prior to 2010. Compl. ¶ 19. Then, on March 27, 2008, Mr. Simmons contacted Keith Kent, an employee of Reunion, and asserted that the facility would not be relocated and that if Reunion did not extend the Lease, FAA would purchase the property. Compl. ¶ 20. Mr. Simmons sent a further e-mail the same day, asking for "a survey, appraisal [and] title for the site in order to make an offer for the purchase and [a] business case [for the purchase]." *Id.*

On July 8, 2008, Reunion met with FAA staff at the FAA's offices near Atlanta, Georgia regarding the removal or relocation of the facility. Compl. ¶ 21; Answer ¶ 21. The FAA remained firm that relocation of the facility was not possible. Answer ¶ 21. By letter dated July 15, 2008, Reunion offered to extend the Lease to allow the FAA to remain in possession of the property until the end of 2010. Joint Prelim. Status Report, Ex. 2. Reunion and the FAA disagree as to whether the parties had further communications subsequent to the FAA's receipt of the July 15, 2008 letter. *Compare* Compl. ¶ 21 ("The Lease expired on September 30, 2008 without response from the FAA."), *with* Answer ¶ 21 ("Defendant … states that the FAA had additional communications with [Reunion]

subsequent to the receipt of [the] July 15, 2008 letter."). Regardless, the parties agree that the Lease expired on September 30, 2008. Compl. ¶ 21; Answer ¶ 21. Reunion sent and FAA received a letter, dated October 16, 2008, demanding that FAA quit and vacate the property covered by the Lease. Compl. ¶ 22.

On November 4, 2008, Reunion sent a letter to Anthony Palladino of the Office of Dispute Resolution for Acquisition for the FAA (the "Office"), requesting that the Office contact the FAA "to determine [its] willingness to participate in a non-binding ADR process." Joint Prelim. Status Report, Ex. 3 (internal quotation marks omitted). The Office responded by communicating Agency counsel's "non-interest in attempting resolution in this matter at this time." *Id.,* Ex. 5. Reunion filed this action on April 30, 2009.

The government admits "FAA has not paid rent for the leasehold of the VORTAC property since the expiration of the lease [on September 30, 2008] and that it [has] continued to occupy the VORTAC property [since that time]." Answer ¶ 22. The government further "admits to a temporary physical taking of a leasehold interest in the VORTAC property occupied by the FAA for the period from October 1, 2008 to December 31, 2009." Answer ¶ 25. As previously stated, the government advises that it will file a condemnation action in the district court by December 31, 2009. Def.'s Stmt. at 4.

## STANDARDS FOR DECISION

### *Motion to Strike Insufficient Defenses*

RCFC 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act[ ] on its own[,] or on motion by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading." RCFC 12(f). A motion to strike must be directed at a "pleading." RCFC 12(f); *see Tecom, Inc. v. United States,* 86 Fed.Cl. 437, 441 n. 2 (2009); *Boston Edison Co. v. United States,* 64 Fed.Cl. 167, 180 n. 15 (2005). Notably, federal courts generally are reluctant

to respond favorably to motions to strike. *See, e.g., Fisherman's Harvest, Inc. v. United States*, 74 Fed.Cl. 681, 690 (2006) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 394 (3d ed. 2004) ("[B]ecause striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under [Fed.R.Civ.P.] 12(f) are ... infrequently granted.")).[6] "If sufficiency of [a] defense depends on disputed issues of fact or questions of law, a motion to strike [that defense] should not be granted." *System Fuels, Inc. v. United States*, 73 Fed.Cl. 206, 216 (2006) (quoting 2 James Wm. Moore, *Moore's Federal Practice* § 12.37[4] at 12–100.5 (3d ed.2006)) (internal quotation marks omitted).

Here, Reunion's motion to strike is directed to the government's jurisdictional defense and the government's challenge to the legal viability of Reunion's claims. Pls.' Mot. at 1. In the circumstances at hand, both matters may be resolved at this stage of the case notwithstanding the ordinary reluctance of a court to intrude upon the orderly development of a case by striking a portion of a pleading. *See, e.g., Coca–Cola Co. v. Howard Johnson Co.*, 386 F.Supp. 330, 333 (N.D.Ga. 1974) ("A successful motion [to strike a defense] requires that the insufficiency of the defense be clearly apparent.").

■■■ "Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action." *OTI Am., Inc. v. United States*, 68 Fed.Cl. 108, 113 (2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Subject matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*, or even on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir. 1993). As plaintiff, Reunion bears the burden of establishing that this court has jurisdiction to hear its claims. *See McNutt v.*

*General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

### *Reunion's Dual Theories of Liability*

■■■ A governmental lessee who holds over after the expiration of the lease term and fails to vacate the property can be held liable to the lessor either (i) under a contractual theory for breach of the implied duty to vacate the premises at the expiration of the lease, or (ii) under a takings theory for temporarily taking the lessor's property without just compensation. *See Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1299, 1300 n. 13 (Fed.Cir.1986) ("[A]n implied duty to vacate is an inherent part of every fixed term lease agreement unless the parties explicitly express an intention to the contrary."); *898 Third Ave. Corp. v. United States*, 165 Ct.Cl. 280 (1964) (holding that the owner of property leased to the government for use as a Post Office was entitled to just compensation for a temporary taking when the government remained in possession after the lease expired, with the just compensation being measured by the reasonable rental value of the premises during the holdover period); *see also Allenfield Assocs. v. United States*, 40 Fed.Cl. 471, 488 (1998) (finding "physical occupancy, and use by the [government agency] [after the term of the lease expired], constitutes a temporary taking ... under the Fifth Amendment [and an alternative means by which to compensate plaintiff]" (citing *Niagara Falls Bridge Comm'n v. United States*, 111 Ct.Cl. 338, 76 F.Supp. 1018, 1019 (1948))). Although ordinarily contractual claims take precedence and it is only when a contractual remedy is unavailable that the court will grant relief under the Takings Clause, *see City Line Joint Venture v. United States*, 503 F.3d 1319, 1323 (Fed. Cir.2007) ("When a viable contract claim exists, [the court] should not reach out to decide the takings issue."), the government in this case has conceded liability for a temporary taking and has urged the court to limit

---

**6.** RCFC 12(f) is modeled after Fed.R.Civ.P. 12(f), and interpretation of that rule informs the court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims ("interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure").

any further proceedings to determining just compensation. Def.'s Stmt. at 4.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Whether a compensable taking has occurred is "a question of law based on factual underpinnings." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed.Cir.2001) (citations omitted). The plaintiff bears the burden of proving the relevant factual grounds for its claim against the United States by proffering "evidence which is more convincing than the evidence which is offered in opposition to it." *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1350 (Fed.Cir.2006) (citation omitted).

To establish a viable takings claim, the plaintiff must prove two things, (1) that it had "a property interest for purposes of the Fifth Amendment," *Members of the Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1330 (Fed.Cir.2005), and (2) that the government's actions "amounted to a compensable taking of that property interest." *American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed.Cir.2004). A physical occupation of real property is invariably a compensable taking. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).[7]

## ANALYSIS

### A. Subject Matter Jurisdiction

The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act waives sovereign immunity, but it does not by itself confer a right to recovery. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (stating that the Tucker Act confers jurisdiction where a substantive right already exists). Such a right must be founded in some other source of law that " 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.' " *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *Testan*, 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) ("[A] fair inference will do.").

Here, "[i]t is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction." *Jan's Helicopter Serv., Inc. v. Federal Aviation Administration*, 525 F.3d 1299, 1309 (Fed.Cir.2008); *see also Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990); *Moden*, 404 F.3d at 1341 ("[T]o the extent [plaintiff has] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper."). Accordingly, the court has jurisdiction over Reunion's first claim for relief, alleging the United States has taken its private property for public use and seeking just compensation under the Fifth Amendment. Compl. ¶ 25. Similarly, Reunion's contractual claim is also jurisdictionally viable under the Tucker Act. Essentially what Reunion asserts is a breach of the implied covenant to vacate the premises upon expiration of the Lease, *see Prudential Ins. Co.*, 801 F.2d at

---

7. The government's intent is not at issue in this case because the FAA has purposefully continued in possession of the VORTAC property notwithstanding the expiration of its lease. *Cf. Cary v. United States*, 552 F.3d 1373, 1377 (Fed.Cir. 2009) (a plaintiff must demonstrate either that "the government intended to invade a protected property interest" or that "the government should have predicted or foreseen the resulting injury") (internal quotation marks omitted); *see also Moden v. United States*, 404 F.3d 1335, 1344 (Fed.Cir.2005) (holding that "proof of causation, while necessary, is not sufficient for liability in an inverse condemnation case"); *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1356 (Fed.Cir. 2003) ("to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner['s] right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.").

1299, for which it seeks damages. Compl. ¶ 27.

Recognizing the jurisdictional propriety of most of Reunion's complaint, the government has restricted its assertion of the defense of lack of subject matter jurisdiction to Reunion's count for relief labeled "Violation of FAA regulations." *See* Def.'s Stmt. at 2. In this count, Reunion alleges that "the FAA has violated its own regulations, ... which regulations were designed to protect [plaintiffs], ... all to [plaintiffs'] damage." Compl. ¶ 26. As the government frames the issue, "to the extent the [c]omplaint challenges the legality of governmental action, this [c]ourt lacks jurisdiction." Def.'s Stmt. at 2. Reunion's claim in this regard arguably rests on the Administrative Procedure Act ("APA"), and the government correctly points out that this court lacks jurisdiction to review a federal agency's action pursuant to the APA. *See, e.g., Lion Raisins Inc. v. United States,* 416 F.3d 1356, 1370 n. 11 (Fed.Cir.2005) ("Of course, no APA review is available in the Court of Federal Claims."). Accordingly, Reunion's motion to strike the government's affirmative defense of lack of subject matter jurisdiction is unavailing in part and is therefore denied. As a further result, the court will act *sua sponte* to dismiss for lack of subject matter jurisdiction the count of Reunion's complaint regarding the FAA's regulations.

### B. *Failure to State a Claim*

■ The government's affirmative defense of failure to state a claim upon which relief can be granted has been supplanted by the government's admissions in its answer and other filings. As previously stated, the government has admitted "a temporary physical taking of a leasehold interest in the VORTAC property occupied by the [FAA] for the period from October 1, 2008 to December 31, 2009, the date by which the direct condemnation will be filed in district court." Def.'s Stmt. at 7; *see also* Answer ¶¶ 6, 8, 25 (same); Def.'s Opp'n at 3 (same). Moreover, the government has conceded facts that establish the viability of Reunion's contract claim. That the parties struck a holdover clause from the Lease as executed demonstrates that the implied duty to vacate remained an inherent part of the Lease. *See supra,* at 3. There has been no waiver of the implied duty to vacate the premises upon expiration of the Lease. *See Prudential Ins. Co.,* 801 F.2d at 1299. And the government, by "admit[ting] that the lease expired on September 30, 2008," "that the FAA has not paid rent for the leasehold of the VORTAC property since the expiration of the lease," and "that it continues to occupy the VORTAC property," Answer ¶¶ 21–22, has conceded that it has breached the implied duty to vacate.

In light of the government's explicit "admission of liability" respecting Reunion's temporary takings claim, *see* Def.'s Stmt. at 9, and its concessions of fact regarding Reunion's contract claim, the government's defense of failure to state a claim is unavailing. Reunion's motion to strike that defense will be granted. *See American Indem. Co. v. Webster Parish Sch. Bd.,* 98 F.Supp. 360, 364 (W.D.La.1951) (action on motion to strike defense as insufficient "depends upon circumstances of particular case, after considering all the pleadings together").

### C. *Trial of Just Compensation or Damages*

Liability having been established, the government argues that future "proceedings should be limited to determining just compensation for the period between the end of the lease and the filing of the condemnation action [in district court]." Def.'s Stmt. at 4. Reunion urges that the court set a trial date, allowing a period for discovery. Pl.'s Stmt. at 9. The government suggests that six months be allowed for discovery, with the time for this purpose to run from the date the condemnation action is filed in district court. Def.'s Stmt. at 9.

The proofs at trial of damages for a breach of contract and of just compensation for a taking can be very similar, so much so that the Federal Circuit has ordered that a prior judgment rendered on contractual grounds be reinstated as a judgment for just compensation under the Fifth Amendment. *See Cienega Gardens v. United States,* 331 F.3d 1319, 1353 (Fed.Cir.2003) (reinstating a judgment for damages for breach of contract entered in *Cienega Gardens v. United States,* 38 Fed.Cl. 64 (1997)). In this instance, because the government has explicitly conceded

liability for a taking under the Fifth Amendment, Reunion's takings claim shall take precedence at trial. However, because Reunion has neither waived nor abandoned its contractual claim, it should have the opportunity to perfect that claim and present evidence at trial to the extent Reunion believes it is entitled to damages for breach of contract that exceed or differ from just compensation for the taking.

 The government's suggestion that discovery in this case be keyed to the time the condemnation action is filed raises a concern. In their preparations for trial, the parties should keep in mind that the measure for just compensation for a temporary taking almost certainly will differ from that applied in a condemnation action in district court. Just compensation requires that an aggrieved property owner "be put in as good a position pecuniarily as if his property had not been taken." *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); *see also United States v. Miller*, 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336 (1943). For a permanent taking, courts typically measure just compensation by reference to the fair market value of the property taken. *See, e.g., United States v. Fifty Acres of Land*, 469 U.S. 24, 29, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984); *United States v. Chandler–Dunbar Water Power Co.*, 229 U.S. 53, 81, 33 S.Ct. 667, 57 L.Ed. 1063 (1913). However, just compensation for a temporary taking, which denies a landowner use of his or her property only for a finite period of time, frequently is measured by the fair market *rental* value of the property. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315–18, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (discussing the decisions in *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); *United States v. Petty Motor Co.*, 327 U.S. 372, 377–81, 66 S.Ct. 596, 90 L.Ed. 729 (1946); and *United States v. General Motors Corp.*, 323 U.S. 373, 379–84, 65 S.Ct. 357, 89 L.Ed. 311 (1945)); *see also Niagara Falls Bridge Comm'n*, 76 F.Supp. at 1019. "[S]ince a transfer brought about by eminent domain is not a voluntary exchange, this [rental] amount can be determined only by a guess, as well informed as possible, as to what the equivalent would probably have been had a voluntary exchange taken place." *Kimball Laundry*, 338 U.S. at 6, 69 S.Ct. 1434.[8]

Nonetheless, the court adopts the general outlines of the parties' positions on discovery and trial and provides that all discovery shall be completed by July 1, 2010. A pre-trial conference shall be held on September 20, 2010, at the National Courts Building in Washington, D.C., beginning at 10:00 a.m. Trial shall commence on September 27, 2010, at a location and time to be determined.

## CONCLUSION

For the reasons stated, plaintiffs' motion to strike the government's jurisdictional defense is DENIED. Plaintiffs' second count alleging a violation of the FAA's regulations is DISMISSED for want of subject matter jurisdiction. Given the government's concession of liability respecting plaintiffs' takings count and its factual admissions regarding plaintiffs' contractual count, plaintiffs' motion to strike the government's defense of failure to state a claim is GRANTED.

As stated *supra*, all discovery regarding just compensation and damages shall be completed by July 1, 2010, a pre-trial conference shall be held on September 20, 2010, and trial shall commence on September 27, 2010.

It is so ORDERED.

---

**8.** Interest also should be addressed at trial as a factual issue. "If the [g]overnment pays the owner before or at the time the property is taken, no interest is due on the award ... [b]ut if disbursement of the award is delayed, the owner is entitled to interest thereon." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984) (citations omitted). Accordingly, where the government does not pay compensation at the time of the taking, the Takings Clause requires a payment of interest. *Seaboard Air Line Ry. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923); *see also Library of Cong. v. Shaw*, 478 U.S. 310, 317 n. 5, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, *as recognized in Landgraf v. USI Film Prods.*, 511 U.S. 244, 251, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).