**Helen CARROLL, Charles Francis Carroll, Kathryn Dhom, Elizabeth Jones, India Markwell and Margaret Elkins, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**The ARKANSAS FIRST NATIONAL BANK OF HOT SPRINGS, Trustee under the Terms of the Last Will and Testament of A. B. Gaines, deceased, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Nos. 921, 923.**

United States District Court W. D. Arkansas, Hot Springs Division.

May 27, 1964.

Wood, Chesnutt & Smith, Wootton, Land & Matthews, Hot Springs, Ark., for plaintiffs.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.
Civil Action No. 921

This case was commenced October 24, 1963, in the Chancery Court of Garland County, Arkansas, against the Small Business Administration, hereafter referred to as SBA. The plaintiffs in Civil Action 921, Helen Carroll, Charles Francis Carroll, Kathryn Dhom, Elizabeth Jones, India Markwell, and Margaret Elkins, alleged that they were the owners of the building situate on Lots 38 and 39 in Block 89 in the U. S. Hot Springs Reservation in the City of Hot Springs, Arkansas, in which a business known as C & W Cafeteria No. 1 was operated by Clay Hairston at 348 Central Avenue, Hot Springs, Arkansas. They further alleged that the SBA was the holder of a first mortgage on the equipment of C & W Cafeteria No. 1 located on the above described premises, and that there was an agreement between the plaintiffs and defendant that the defendant would pay rent on the premises from May 29, 1963, to September 10, 1963. The plaintiffs in their prayer asked the court to determine the reasonable value of the rent and render judgment in their favor, together with their expenses herein and all other equitable relief to which they might be entitled.

On November 7, 1963, the United States filed its petition for removal, in which it stated "that the Small Business Administration is not a corporation but an Executive Agency of the United States of America pursuant to Title 15, U.S.C., Sec. 633(a), and as such Executive Agency cannot be sued or sue in its own name and the suit herein is actually a suit against the United States."

Also, on November 7, 1963, the United States filed a motion to dismiss, alleging that the SBA is not capable of being sued, and that the United States is a proper party defendant, and that the United States has not been served in the manner provided by Rule 4(d) (4), Fed. R.Civ.P.

On November 13, 1963, plaintiffs filed an amendment to their complaint, in which they made the United States a party, reasserted the allegations in the original complaint against the SBA, and prayed that the court determine the reasonable value of the rent accrued in favor of the plaintiffs and enter judgment against the defendant, United States. On November 14, 1963, the court dismissed the plaintiffs' complaint against the SBA and ordered that the case proceed against the United States as defendant.

On March 17, 1964, the defendant, United States, filed its answer, in which it admitted plaintiffs' ownership of the premises described in the complaint and that the business known as C & W Cafeteria No. 1 was operated on the premises by Clay Hairston, who filed a petition in bankruptcy. It further admitted that the SBA was holder of a first mortgage on the equipment of C & W Cafeteria No. 1; that the Trustee in Bankruptcy abandoned all claims to the property, and that said equipment was sold at auction on the premises August 23, 1963. It denied that the SBA occupied the premises under any express agreement to pay rent and denied that any employee of the SBA was authorized to enter into any agreement to pay rent on behalf of the SBA. The defendant further asserted, with respect to the alleged agreement that SBA would pay rent for the time the building was occupied by its property, that paragraph 2(b) of the subordination assignment of the lease of plaintiffs to Hairston relieved it of any obligation to pay rent. The allegation is as follows:

> "6. To induce the defendant to advance the loan secured by the chattel mortgage mentioned in Paragraph 2 hereof, plaintiffs entered into a written agreement

with the defendant containing in part:

"2. Lessor covenants that, in consideration of Bank/SBA making said loan to Borrower, * * * and (c) so long as Bank/SBA has not entered into possession of the premises leased in said lease for the purpose of operating the said business, it shall not be liable for rent or any other obligation of the Borrower pursuant to, or in connection with said lease, and Borrower shall remain liable for all such rents and obligations.

"Lessor further covenants and agrees as follows:

* * * * * *

"(b) That in the event of any default under the terms of said lease, Lessor will not terminate the lease or take any action to enforce any claims with respect thereto without giving to the holder of the note at least sixty (60) days prior written notice and the right to cure such default within said period:"

On May 7, 1964, the defendant, pursuant to Rule 36, Fed.R.Civ.P., filed request for admissions, in which it stated:

"1. That the copy of the Assignment of Real Estate Lease & Agreement attached to the answer of the United States is a true copy of the agreement entered into by the parties named therein on the date therein stated.

"2. That plaintiffs have not given written notice to the holder of the note described in the Assignment of Real Estate Lease & Agreement, a copy of the same being attached to the Answer of the defendant in compliance with Paragraph No. 2(b) of said agreement.

"3. There has been no written agreement between plaintiffs and any Agent of the defendant in regard to rent to be paid by the defendant to the plaintiffs.

"4. That the alleged expressed agreement upon which this within action is based allegedly arose solely from the word and action of Joseph L. Tresp. [Branch Counsel of SBA.]"

On May 18, 1964, the plaintiffs in response to the request for admissions filed by defendant admitted requests Nos. 1 through 4, and further stated:

"5. The exclusive occupancy of the premises by the defendant for storage of its collateral while arrangements were made for the sale thereof, and the granting of additional time to the purchasers of the collateral sold therefrom within which to remove same from the premises, constitutes the obligation to pay rent."

Civil Action No. 923

The plaintiff in Civil Action 923, Arkansas First National Bank of Hot Springs, commenced an action in the Garland County Chancery Court against SBA on November 4, 1963. The complaint alleged that the plaintiff is Trustee of the Estate of A. B. Gaines, deceased, owner of the building situate on Lots 6, 7, 8 and part of Lot 9 in Block 129 of the U. S. Hot Springs Reservation in the City of Hot Springs, Arkansas, and that a business known as C & W Cafeteria No. 2 was operated on the premises at 707 Central Avenue by Clay Hairston. The complaint further alleged that the SBA was the holder of a first mortgage on the equipment of C & W Cafeteria No. 2, and that the Trustee in Bankruptcy abandoned all claims to the said equipment May 29, 1963, and that thereafter SBA occupied the premises under an agreement to pay rent and continued to occupy the premises to the date of the filing of the complaint. The plaintiff prayed the court to determine the fair value of the rent owing by the defendant to the plaintiff, and render judgment in its favor for said amount,

together with its costs and all other equitable relief to which it might be entitled.

On November 21, 1963, the United States removed the case to this court pursuant to Title 28 U.S.C. § 1441. In its removal petition, it asserted that the SBA is an Executive Agency of the United States under Title 15 U.S.C. § 633(a), and as such cannot sue or be sued in its own name, and that the United States is the actual party defendant.

On November 21, 1963, the United States also filed a motion to dismiss, in which it asserted that the SBA is not a proper party and that the United States is the proper party defendant, and that no attempt to serve the United States in the manner provided by Rule 4(d) (4), Fed.R.Civ.P., had been attempted.

On November 27, 1963, the plaintiff filed an amendment to its complaint, in which it asserted that the United States is the proper party defendant and reasserted the allegations in its original complaint against the SBA, and prayed that the court determine the reasonable value of the rent accrued in favor of the plaintiff and render judgment in its favor in said amount against the defendant, United States, together with its costs and all other proper relief. On November 29, 1963, the court dismissed the plaintiff's complaint as against the SBA and ordered the case to proceed against the United States as party defendant.

On March 18, 1964, the United States in its answer admitted the plaintiff's ownership of the premises described in the complaint and that a business was operated on the premises known as C & W Cafeteria No. 2 by Clay Hairston. It further admitted that the SBA was the holder of a first mortgage on equipment of the C & W Cafeteria No. 2, and further admitted that the Trustee in Bankruptcy abandoned all claims to said equipment. It denied that the SBA occupied the premises under any agreement to pay rent, but it admitted that equipment on the premises was sold at auction on August 23, 1963, and that the SBA received the proceeds thereof. It further denied that any employee of the SBA was authorized to enter into any agreement on behalf of it with the plaintiff to pay rent. It further asserted, as a defense to any express agreement to pay rent, the notice requirement in its subordination agreement, which is identical to the provision in Civil Action No. 921, set out in full, supra.

Following the filing of the answer, the defendant submitted a request for admission of facts identical with the request submitted in Civil Action No. 921, and plaintiff filed an identical response.

On May 18, 1964, both cases were tried separately to the court, on the pleadings, ore tenus and documentary evidence. At the conclusion of all of the testimony, the court heard oral arguments in both cases, and announced from the bench that judgment would be entered for the plaintiffs, and in accordance with the oral statement, the court now makes and files its formal findings of fact and conclusions of law, separately stated.

## FINDINGS OF FACT

1.

The plaintiffs, Helen Carroll, Charles Francis Carroll, Kathryn Dhom, Elizabeth Jones, India Markwell and Margaret Elkins, are the owners of the property described as 348 Central Avenue, which was under lease to Clay Hairston at a monthly rental of $650.00. Mr. Hairston operated a business on these premises known as C & W Cafeteria No. 1, which he abandoned on April 15, 1963.

2.

The Arkansas First National Bank of Hot Springs, Trustee of the Estate of A. B. Gaines, owned the premises at 707 Central Avenue, on which a similar business known as C & W Cafeteria No. 2 was operated by Clay Hairston. Mr. Hairston discontinued the operation of C & W Cafeteria No. 2 on April 15, 1963.

3.

The SBA was the holder of a first mortgage on the cafeteria equipment used in the operation of both cafeterias.

4.

Mr. Hairston was adjudicated a bankrupt on April 26, 1963, and on May 29, 1963, the Trustee in Bankruptcy abandoned all claims to the equipment in the cafeterias.

5.

On behalf of SBA the cafeteria equipment of both cafeterias was sold on the respective premises August 23, 1963, at public auction. At that date the keys to both premises were given to a Mr. Weaver of Russellville, Arkansas, a purchaser of the larger equipment. Mr. Weaver was given ten days in which to remove his purchased property by the auctioneer, at and in accordance with the request of the representative of the SBA attending the sale.

6.

At various times after May 29, 1963, the owners of the premises at both locations, at the direction of the SBA, allowed equipment to be removed which did not belong to the SBA.

7.

Subsequent to the closing of the cafeterias at both locations, the owners could not use or re-let the premises until the removal of the cafeteria equipment.

DISCUSSION

As heretofore stated, the plaintiffs predicate their claims for rent on an alleged express agreement made with the Branch Counsel of the SBA, who they claim represented to them that the SBA would pay rent for the use of both premises but did not stipulate a specific monthly rental, and, in the alternative, claim an amount based on the reasonable rental value of the premises for the time they were deprived of the use and occupancy thereof because of the presence of the equipment over which the SBA was exercising dominion and control. The United States, in the pleadings and at the trial, contended that the Branch Counsel for the SBA at Little Rock had no authority to bind the United States or the SBA by any express promise or agreement to pay rent for the use of the plaintiffs' premises, citing the April 3, 1963, Federal Register, Vol. 28, pp. 3228 and 4934. In view of the conclusion the court has reached in these actions, an elaborate discussion of the lack of authority of the Branch Counsel representing the SBA to make contractual agreements on its behalf is unnecessary.

Apart from contractual agreements made by agencies of the United States with private individuals for the use of their property, the Government, under some circumstances and conditions, may become liable as would a private individual for depriving a landowner of the use and occupancy of his property.

In Buffalo & Fort Erie Public Bridge Authority v. United States, (1946) 65 F. Supp. 476, 106 Ct.Cl. 731, the plaintiff building owner sued the United States to recover the fair and reasonable rental value for the "use and occupation" by the Customs and Immigration Services of the United States of the plaintiff's building. The court stated the circumstances of the occupancy 65 F.Supp. at page 478, as follows:

> "The two Services have occupied the buildings and have enjoyed the use of the facilities in question, since the opening of the Peace Bridge in 1927, at all times with the consent of plaintiff, subject to its express demand for rental in and subsequent to July 1938. No lease or agreement in writing was ever entered into for such occupancy. During all such time no rent or other monetary compensation was ever paid on behalf of either of the Services for such use. No express promise was ever made, by any representative of either of the two Services qualified to bind the Government thereby, that rent would be paid. On the other hand no promise was ever made by plaintiff or its predecessor to furnish the buildings or facilities rent free. Under these circumstances it is our duty to determine whether there may be fairly implied in the facts of

the case an obligation or undertaking to compensate plaintiff for the use of its property."

At page 485 of 65 F.Supp. the court stated:

"So long as plaintiff is limited to a recovery of the fair value of that which the Services have enjoyed at plaintiff's expense after its demand for compensation, and within the bounds of the authority necessarily implied in the enactments applicable to such Services, no violence is done to the principle employed in Hooe v. United States, 218 U.S. 322, 31 S.Ct. 85, 54 L.Ed. 1055, that 'Congress holds the purse strings' and may limit governmental expenditures for rent and other purposes."

In Niagara Falls Bridge Commission v. United States, (Ct.Cl.1948) 76 F.Supp. 1018, 111 Ct.Cl. 338, plaintiff building owner sued the United States for rental of spaces occupied by the Customs Service and Immigration Service of the United States. The Customs Service had executed a lease with the plaintiff, but the Immigration Service had no lease covering the space it occupied. The court allowed recovery of a "reasonable rental" for the space occupied by the Immigration Service and implied an obligation on the part of the United States to pay by virtue of its occupancy of the premises. Beginning at page 1019 of 76 F.Supp. the court stated:

"If anyone goes into occupancy of another's premises not under a claim of right, he does so with the implied obligation that he will pay a reasonable rental therefor. This applies to the United States as well as to anyone else. [Citing cases.]

"Such a contract is implied because no one has a right, of course, to occupy another's premises without paying for it, and it is to be presumed that a person occupying them does so with the understanding that he will discharge the obligation to pay rent which the law imposes upon him. It is to be presumed that a party intends to do that which the law requires him to do.

"Furthermore, if the United States occupies a person's premises, it is, ordinarily, liable for the rental value thereof even though it occupies them against the will of the owner and without an intention on the part of the United States to pay rent. This liability arises under the Fifth Amendment prohibiting the taking of private property without the payment of just compensation. United States v. Causby, 328 U.S. 256, 66 S. Ct. 1062, 90 L.Ed. 1206; * * *

* * * * * *

"While this Service has at no time expressly agreed to pay rent, nor is such an agreement to be implied from any correspondence or conversation between the parties, however, we think such a contract is to be implied from their continued occupation of the premises after this demand was made in June 1944. * * * In the absence of a refusal, it is to be presumed that the defendant intended to discharge that obligation which the law imposed upon it by reason of their occupancy of the premises of another. Even had there been a refusal to pay, defendant would, no doubt, have been liable under the Fifth Amendment.

"This conclusion, we think, is fully sustained by our decision in Buffalo & Fort Erie Bridge Authority v. United States, supra, where the defendant's liability is more fully discussed."

In Feldwin Realty Co. v. United States, (D.N.J.1959) 179 F.Supp. 70, the landlord brought an action against the United States to recover rent for premises on which property belonging to the United States was stored for three months. The United States Government was held liable for three months' rent, and the court 179 F.Supp. at page 72 stated:

"* * * The tenant Government, having taken possession of the premises from the landlord, was re-

sponsible to the landlord for the value of its use and occupation until it redelivered same to the landlord."

Thus, it is apparent that the United States, by virtue of its exercise of dominion over the plaintiffs' premises by not removing the equipment over which it had exclusive dominion and control, as a result of the abandonment of the property on May 24, 1963, by the Trustee in Bankruptcy, deprived the plaintiffs of their property, and they are entitled to recover a reasonable rental for its use for the time during which they were deprived of its use. As stated in Buffalo & Fort Erie Public Bridge Authority v. United States, supra, 65 F. Supp. at page 486 as follows:

> "* * * To allow plaintiff to recover from the Government the fair and reasonable value of the use of its property had by the Customs and Immigration Services since August 2, 1938, does no more under the facts and circumstances of the case, than to give effect to the well established implied promise rule stated by the court in the [United States v.] North American case, supra, 253 U.S. [330] at page 333, 40 S.Ct. [518] at page 519, 64 L.Ed. 935, that 'When the government, without instituting condemnation proceedings, appropriates for a public use under legislative authority private property to which it asserts no title, it impliedly promises to pay therefor.' "

The defendant's contention that it is not liable for the use and occupancy of the premises for the reason that the plaintiffs did not give notice of the default in the payment of the rent by the lessee, as required by the leases, and the subordination agreement with it, is without merit for the reason that the SBA had full, complete, and legal notice of the bankruptcy of the lessee and the consequent default; that the attorney for the SBA attended all hearings in the bankruptcy case and was present in court representing the SBA at the time the Referee in Bankruptcy authorized the Trustee to abandon the property covered by the mortgage to the mortgagee, SBA, but notwithstanding such knowledge the SBA, without regard to the rights of the plaintiffs, proceeded to allow the mortgaged property to remain in the buildings until at least ten days subsequent to the sale on August 23, 1963.

The fact that the plaintiffs covenanted in the subordination agreement that the SBA would not be liable for rent "so long as SBA had not entered into possession of the premises leased in said lease for the purpose of operating the said business," is not a defense to the claim of the plaintiffs for the reasons above stated.

As stated in the Niagara Falls Bridge Commission case, supra, it is evident that the United States, in depriving an individual property owner of the use and occupation of its real property improvements, impliedly promises to pay the reasonable value for the use thereof without regard to any express promise or agreement on the part of the United States to pay rent. Conduct on the part of the United States which deprives a party of the use and occupancy of its real property improvements thus imposes liability upon the United States as it would a private individual.

## CONCLUSIONS OF LAW

1.

The court has jurisdiction of the parties and the subject matter herein.

2.

No express contract to pay rent was entered into between the plaintiffs and the SBA by any Government employee having authority to bind the SBA or the United States.

3.

Cafeteria equipment over which the SBA had exclusive dominion and control occupied the premises to the exclusion of the property owners at 348 Central Avenue from May 29, 1963, until September 10, 1963, and at 707 Central Avenue

from May 29, 1963, until October 22, 1963.

4.

The plaintiff owners of the above described premises were deprived of the use and occupancy of their real property by the presence of equipment under the dominion and control of the United States, acting through the SBA.

5.

The plaintiffs, Helen Carroll, Charles Francis Carroll, Kathryn Dhom, Elizabeth Jones, India Markwell, and Margaret Elkins, are entitled to recover from the United States for the use and occupation of their premises by the SBA the sum of $2,166.00.

6.

The plaintiff, The Arkansas First National Bank of Hot Springs, Trustee of the Estate of A. B. Gaines, is entitled to recover from the United States for the use and occupation of its premises by the SBA the sum of $1,375.00.

Judgment in accordance with the above is being entered today.